United States District Court
Southern District of Texas
**ENTERED**
October 29, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MIRIAM SANDOVAL SUAREZ, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. 1:19-cv-124 | |
| § | | |
| ROBERT COWAN, et al., § | | |
| Defendants. § | | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On July 5, 2019, Plaintiff Miriam Sandoval Suarez filed a petition for writ of habeas corpus and complaint for declaratory and injunctive relief against Defendants Robert M. Cowan, Norma A. Limon, Kevin McAleenan, William Barr and the United States of America (collectively "Defendants"). Dkt. No. 1. The claims against the individual defendants are raised solely in their official capacities. Id. The crux of her complaint is that USCIS's refusal to issue employment authorization documents places her in habeas custody and violates her rights. Id.

On September 10, 2019, the Defendants filed a motion to dismiss for lack of subject matter jurisdiction. Dkt. No. 5. Sandoval Suarez has filed a response. Dkt. No. 7.

After reviewing the record and the relevant case law, it is recommended that the case be dismissed for lack of jurisdiction. First, Sandoval Suarez is not in custody for habeas purposes. Furthermore, USCIS has been given such unfettered discretion, over the issuance of employment authorization documents, that the Court lacks jurisdiction under the Administrative Procedures Act to review those decisions.

**I. Background**

**A. Statutory Background**

In order to better understand Sandoval Suarez's claims, the Court must first explain the statutory and regulatory background that underlies the history of this case.

As relevant here, in order for an alien to become a legal permanent resident ("LPR") of the United States, two different applications must be filed (they can be filed

1

simultaneously or seriatim). First, a U.S. citizen relative files a Form I-130 ("alien relative visa"), seeking alien resident visas on behalf of their alien relatives. A successful I-130 application "results in the beneficiary of the petition being classified as an immediate relative for purposes of issuing a visa for admission to the United States; it does not grant a visa or permanent resident status." Bolvito v. Mukasey, 527 F.3d 428, 431 n. 4 (5th Cir. 2008).

Second, the alien – who is related to the United States citizen – files a Form I-485 ("LPR") application to adjust their status to that of legal permanent resident. United States Citizenship and Immigration Services ("USCIS") is the agency with jurisdiction over these LPR applications. There is no administrative appeal for denial of LPR petitions by USCIS. 8 C.F.R. § 245.2(c).

Under federal regulations, USCIS can issue employment authorization documents ("EADs") to aliens who have filed an LPR application. 8 C.F.R. § 274a.12(c)(9). The exact language provides that, "[a]n alien who has filed an application for adjustment of status to lawful permanent resident," is the one who "must apply for work authorization" (as opposed to certain aliens who automatically receive EADs without requiring a separate work application process). 8 C.F.R. § 274a.12(c)(9). Form I-765 is the application used by aliens to seek EADs. The approval of an individual application for EADs is "within the discretion of USCIS." 8 C.F.R. § 274a.13(a)(1). Again, if the application is denied, there is "no appeal" available. 8 C.F.R. § 274a.13(c).

If an alien is placed in removal proceedings, the immigration judge has the "exclusive" authority to grant them legal permanent resident status, assuming they meet the qualifications. 8 C.F.R. § 1245.2(a)(1)(I). Once the alien renews his or her LPR application, during removal proceedings, the alien is eligible to again receive an EAD. See Dayo, et. al, v. Napolitano, Civil No. 11-cv-728, Dkt. No. 42, pp. 11-12 (C.D. Calif. 2012) (USCIS recognizing that "an I-485 properly renewed with the Immigration Court by an alien in removal proceedings" renders the alien eligible to receive EADs).

This case is primarily about what happens during the period between when USCIS denies the LPR application and when the alien is placed in removal proceedings and is able

to renew that application.  In the instant case, USCIS has refused to issue EADs to Sandoval Suarez during that interim period; the question before the Court is to what extent the law and regulations afford USCIS discretion in making that decision.

### B. Factual Background

On November 13, 2016, Sandoval Suarez – a Mexican national – filed an I-485 petition to adjust status, as the parent of a U.S. citizen. Dkt. No. 1, p. 2.

On June 29, 2018, USCIS denied the application on the grounds that Sandoval Suarez was inadmissible. Dkt. No. 1, p. 2.

On July 20, 2018, Sandoval Suarez filed an application for EADs. Dkt. No. 1, p. 3. On May 6, 2019, USCIS denied the EAD application on the grounds that Sandoval Suarez no longer had a pending I-485 petition. Id.  Sandoval Suarez was not afforded an administrative appeal of the denial and is not considered eligible to receive EADs unless she is placed in removal proceedings. Id.

### C. Procedural History

On July 5, 2019, Sandoval Suarez filed a petition for writ of habeas corpus and a complaint for declaratory and injunctive relief against the Defendants in their official capacities.  She seeks relief under 28 U.S.C. § 2241 (habeas corpus), as well as under the Administrative Procedures Act. Dkt. No. 1.  She also seeks a declaratory judgment that she is "eligible for an EAD from when [she] properly filed [an] application for adjustment of status [and continuously remains so], until such time as [she] is either finally ordered removed, or granted lawful permanent resident status." Dkt. No. 1, p. 7.

On September 3, 2019, the Court issued an order, noting that subject matter jurisdiction may not be present in this case. Dkt. No. 4.  The Court observed that, in two previous cases (albeit with different plaintiffs), it had addressed the precise legal issues raised by Sandoval Suarez and found that there was no subject matter jurisdiction. Id. (citing Villafranca v. Cowan, No. CV B-18-39, 2018 WL 8665002 (S.D. Tex. July 3, 2018), report and recommendation adopted, No. 1:18-CV-039, 2018 WL 8665000 (S.D. Tex. Aug. 16, 2018) (J. Rodriguez); Torres Casique v. Cowan, Civil No. 1:18-188, Dkt. No. 15 (S.D. Tex. Aug. 22, 2019) (J. Rodriguez).  The Court ordered Sandoval Suarez "to file a

brief, no later than September 20, 2019, outlining why this case is different than the Court's earlier cases and the basis for subject matter jurisdiction in this case." Dkt. No. 4.

On September 10, 2019, the Defendants' filed a motion to dismiss, asserting that the Court lacked subject matter jurisdiction. Dkt. No. 5. The Defendants argue that Sandoval Suarez is not in custody for habeas purposes and that she cannot maintain a valid APA claim. Id.

On September 26, 2019, the Court rescinded its prior show cause order and directed Sandoval Suarez to file a response to the motion to dismiss no later than October 1, 2019. Dkt. No. 6.

On October 1, 2019, Sandoval Suarez filed her response brief. Dkt. No. 7.

## II. Applicable Law

### A. Jurisdiction

The threshold question, before considering the substance of any claim, is whether the court possesses jurisdiction over the claim. This is the case, because federal courts are courts of limited jurisdiction, whose authority exists only within the boundaries established by Congress and the Constitution of the United States. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583-84 (1999). A plaintiff bears the burden of proving jurisdiction. Choice Inc. of Tex. v. Greenstein, 691 F.3d 710, 714 (5th Cir. 2012).

In determining whether jurisdiction exists, the Court may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming v. U.S., 281 F.3d 158, 161 (5th Cir. 2001). Conclusory allegations or "legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Wells v. Ali, 304 Fed. App'x. 292, 293 (5th Cir. 2008) (quoting Fernandez–Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993)).

### B. Habeas Corpus

In order for a court to have habeas jurisdiction under 28 U.S.C. § 2241, the petitioner must be "in custody" when he or she files the petition. Zolicoffer v. U.S. Dep't of Justice, 315 F.3d 538, 540 (5th Cir. 2003). Physical detention is not required to meet this

requirement. <u>Rosales v. Bureau of Immigration & Customs Enf't</u>, 426 F.3d 733, 735 (5th Cir. 2005). "History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a [person's] liberty, <u>restraints not shared by the public generally</u>, which have been thought sufficient in the English-speaking world to support the issuance of <u>habeas</u> <u>corpus</u>." <u>Jones v. Cunningham</u>, 371 U.S. 236, 240 (1963) (emphasis added).

Despite the breadth of the Supreme Court's language, not all governmental actions amount to custody for <u>habeas</u> purposes. The deportation of non-citizens does not place them in custody, even if it removes them from the United States. <u>Merlan v. Holder</u>, 667 F.3d 538, 539 (5th Cir. 2011). "[A]t least one of the two restraints on liberty, or perhaps both, must be present in order to make a finding of custody: (1) There must be present some sort of supervisory control over the defendant, that is, defendant's conduct must be subject in one degree or another to the direction of judicial officers [or] (2) The existence of an imminent possibility of incarceration without a formal trial and criminal conviction may create such a restraint on liberty as to constitute custody." <u>Spring v. Caldwell</u>, 692 F.2d 994, 997-98 (5th Cir. 1982).

### C. Administrative Procedures Act

The Administrative Procedures Act generally provides for judicial review of agency actions. 5 U.S.C. § 706(1). As relevant here, there are two statutory exceptions to this rule, either of which divest the Court of jurisdiction. The first is if there is another statute which "preclude[s] judicial review" of the agency action. 5 U.S.C. § 701(a)(1). The second is where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

Under the latter scenario, there is no jurisdiction for the Court to review an agency's action, "if there are no statutory or regulatory provisions creating standards against which the agency action can be measured." <u>Perales v. Casillas</u>, 903 F.2d 1043, 1047 (5th Cir. 1990).

### D. Declaratory Judgment Act

The Declaratory Judgment Act permits federal courts to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

Despite this permission, "Declaratory Judgment Act claims, without another basis for jurisdiction, cannot support the district court's jurisdiction." Simi Inv. Co. v. Harris County, Tex., 236 F.3d 240, 247 (5th Cir. 2000). "[T]he relevant cause of action must arise under some other federal law . . . to afford jurisdiction of a declaratory judgment suit." Lowe v. Ingalls Shipbuilding, A Div. Of Litton Sys., Inc., 723 F.2d 1173, 1179 (5th Cir. 1984). Thus, seeking declaratory judgment, by itself, does not create jurisdiction in the district court.

### III. Analysis

This case is not about the merits of Sandoval Suarez's claim to LPR status; that determination is left to the Executive Branch. Instead, the substance here relates to the scope of USCIS's discretion in considering EAD applications and whether the Court has jurisdiction to review that discretion. More specifically, the Court must determine the extent of USCIS's discretion in granting or denying applications for work authorizations and whether that discretion is so broad that it implicitly divests the Court of jurisdiction.

As to Sandoval Suarez's habeas claim, the Court must first determine whether she is "in custody" for habeas purposes. If she is not "in custody," that determination ends the inquiry.

As for the APA claim, the Court must resolve whether that statute permits the Court to review the agency's decision.

Finally, as to the declaratory judgment claim, the Court must resolve whether jurisdiction exists for the Court to issue such relief. Each question is addressed in turn.

#### A. Habeas Corpus

Sandoval Suarez has asserted that she has a valid habeas corpus claim. Despite this claim, she has failed to meet a key prerequisite to relief; she is not "in custody."

As discussed earlier, "in custody" does not require physical custody – such as imprisonment – but it must involve "restraints not shared by the public generally." Cunningham, 371 U.S. at 240. For example, persons on parole or probation are "in custody," because their freedom is curtailed in ways not shared by the general public. Id. The same holds true for individuals on supervised release. U.S. v. Brown, 117 F.3d 471,

475 (11th Cir. 1997). Indeed, even a person who was ordered by a court to attend alcohol rehabilitation classes has been found to be "in custody." Dow v. Circuit Court of the First Circuit, 995 F.2d 922, 923 (9th Cir. 1993).

Sandoval Suarez asserts that she satisfies the "in custody" requirement for habeas relief, because the denial of the employment authorization results in "the deprivation of a person's liberty interest in being able to be employed, and the fundamental right to engage in intrastate travel significantly restrain[s] petitioner's liberty to do those things which in this country free men are entitled to do." Dkt. No. 4, p. 9 (quoting Cunningham, 371 U.S. at 242-43) (brackets original). Despite the argument, these limitations do not amount to "in custody" for habeas purposes.

This conclusion is clear, when considered in the light of other examples which do not constitute custodial situations. For example, the deportation of a non-citizen does not place that person "in custody," even though they are unable to lawfully re-enter the United States. Miranda v. Reno, 238 F.3d 1156, 1159 (9th Cir. 2001); Merlan v. Holder, 667 F.3d 538, 539 (5th Cir. 2011). A parent whose parental rights have been terminated is also not in custody. Salinas v. Texas Dep't of Family & Protective Servs., 2012 WL 13685, at *1 (W.D. Tex. Jan. 4, 2012). Being forced to register as a sex offender is not considered custody for habeas purposes. Virsnieks v. Smith, 521 F.3d 707, 718 (7th Cir. 2008). Fines and the suspension of a driver's license, because of traffic violations, are not subject to habeas jurisdiction, because they do not amount to custody. Spring, 692 F.2d at 997-98.

Thus, there appears to be a clear dividing line: if the state has direct authority to control your movements and actions, you are in custody, even if you are not physically imprisoned. Id. On the other hand, if the state issues an order or judgment which indirectly creates consequences that possibly limit your movements and actions, you are not in custody.

In this case, the revocation of the EADs does not render Sandoval Suarez "in custody." The Government is not directly limiting or controlling her freedom of movement. Defendants simply are not authorizing Sandoval Suarez to legally work in this country. While this decision takes away her ability to be legally employed in this country,

7

it does not directly restrict her freedom of movement; nor does it place her movements under the control of the state. Thus, the refusal to issue an EAD does not meet the requirement that Sandoval Suarez be "in custody" for purposes of habeas jurisdiction. Gupta v. U.S. Atty. Gen., 485 F. App'x 386, 388 (11th Cir. 2012).

Sandoval Suarez relies on two cases in support of her habeas claim: Phillips v. Vandygriff, 711 F.2d 1217,1222 (5th Cir. 1983) and Zamora-Garcia v. Trominski, No. M-02-144 (S.D. Tex. Jan. 4, 2005) (Mem. Op. & Order). Dkt. No. 4. This Court has already held, in a previous case, that those cases are distinguishable on their facts. Torres Casique, Civil No. 1:18-188, Dkt. No. 15, p. 6.

In Torres Casique, the Court observed that, "while Vandygriff found that the liberty interest in the Fourteenth Amendment includes 'the right to work for a living in the common occupations of the community,' that case did not concern whether the deprivation of such a right satisfied Section 2241's custody requirement for establishing jurisdiction." Id. (quoting Vandygriff, 711 F.2d at 1222).

Zamora-Garcia concerned the denial of Orders of Supervision. Id. Orders of Supervision are akin to supervised release. As relevant here, an alien on an Order of Supervision must: (1) report to specified immigration officers at specified times; and, (2) obtain advance approval of travel beyond previously specified times and distances. 8 C.F.R. § 241.5(a). The Plaintiffs in Zamora-Garcia argued that they were statutorily entitled to an Order of Supervision and the district court held that such plaintiffs were in custody for habeas purposes. Zamora-Garcia, No. M-02-144, Dkt. No. 124, p. 4. This Court has already held that Zamora-Garcia is not directly applicable in this case, in part because it "pre-dates the Fifth Circuit's Merlan[1] decision, which held that deportation — an act that indirectly but effectively bars an individual from working or traveling altogether within the United States — did not satisfy the custody requirement." Torres Casique, Civil No. 1:18-188, Dkt. No. 15, p. 6. Sandoval Suarez has offered no argument on this point,

---

[1] Merlan v. Holder, 667 F.3d 538 (5th Cir. 2011).

other than to claim that the Court's decision "was incorrect as a matter of law." Dkt. No. 7, p. 15.

Because Sandoval Suarez is not in custody, the Court lacks jurisdiction to consider her claims as habeas claims. Zolicoffer v. U.S. Dep't of Justice, 315 F.3d 538, 541 (5th Cir. 2003). Accordingly, any habeas claims should be dismissed without prejudice for lack of jurisdiction.

### B. Administrative Procedures Act

Sandoval Suarez asserts that this Court can review the denial of her I-765 application, i.e. her employment authorization application, pursuant to the Administrative Procedures Act. Despite her argument to the contrary, the APA bars review of this claim.

As relevant here, the APA expressly provides that it does not apply when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). If this provision applies, then APA review is not authorized, and jurisdiction does not exist. Heckler v. Chaney, 470 U.S. 821, 830 (1985). As discussed further below, this provision is controlling.

In the instant case, USCIS has decided that, once it denied Sandoval Suarez's LPR application, USCIS would no longer issue employment authorization documents – until such time that Sandoval Suarez renewed her LPR application in removal proceedings. Sandoval Suarez maintains that this decision is contrary to the applicable regulations, which, she argues mandate that employment authorizations be continuously available to applicants until such time that their LPR application is granted or they are ordered removed from the country. Thus, this claim is about how much discretion USCIS has to deny applications for EADs during the period between when USCIS denies the LPR application and when Sandoval Suarez renews that application in removal proceedings.

By the terms of the statute, there is no jurisdiction under the APA, if the underlying administrative decision is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). "Agency action is committed to agency discretion by law – and hence beyond the reach of 'abuse of discretion' review – if there are no statutory or regulatory provisions creating standards against which the agency action can be measured." Perales v. Casillas, 903 F.2d

at 1047 (citing Heckler, 470 U.S. at 830). This principle is a "very narrow exception" to the "principle of judicial review of administrative action." Gulf Restoration Network v. McCarthy, 783 F.3d 227, 233 (5th Cir. 2015). It applies in situations where "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." Id.

In order to determine if this exception applies, the Court must first conduct a "careful examination of the statute on which the claim of agency illegality is based," to determine exactly how much discretion Congress has granted the agency. Webster v. Doe, 486 U.S. 592, 600 (1988). In this case, that examination is problematic, because Congress has never directly mandated the issuance of employment authorization documents to aliens. Indeed, employment authorization for aliens is "purely [a] creature[] of regulation." Perales, 903 at 1048-49. Simply stated, "there are no statutes regulating employment authorization." Id. Thus, it can be fairly said that Congress has given USCIS unfettered discretion concerning the issuance of employment authorization to aliens. See Brazos Elec. Power Co-op., Inc. v. Sw. Power Admin., 819 F.2d 537, 543 (5th Cir. 1987) (where Congress gives "neither direction nor limitation" on an agency's decision making, then Congress has permitted "the exercise of the widest administrative discretion").

Sandoval Suarez points to the underlying regulations, contending that the Court can consider whether Sandoval Suarez was eligible for EADs. Dkt. No. 7, pp. 13-16. In certain circumstances, that may be a correct statement of law, but not in this case. The Fifth Circuit has stated that, unless the regulations — or the statute authorizing the regulations — contain specific standards or evidentiary requirements for a decision, the agency has been given unreviewable discretion over the decision. Ellison v. Connor, 153 F.3d 247, 253 (5th Cir. 1998).

As previously noted, there is no statute specifically mandating the issuance of employment authorizations to immigrant aliens. Perales, 903 F.2d at 1048-49. The underlying regulation also does not set out any standards for such decisions. As relevant here, Sandoval Suarez falls within a class of aliens who "must apply for work authorization," as opposed to being automatically entitled to it. 8 C.F.R. § 274a.12(c). That

regulation further provides that: "USCIS, in its discretion, may establish a specific validity period for an employment authorization document, which may include any period when an administrative appeal or judicial review of an application or petition is pending." Id. (emphasis added).

Sandoval Suarez sought employment authorizations pursuant to 8 C.F.R. § 274a.12(c)(9), which permits USCIS to issue EADs to aliens who have filed an application for adjustment of status to lawful permanent alien. The approval of such applications is "within the discretion of USCIS." 8 C.F.R. § 274a.13(a)(1). The regulation lists no standards by which the Court can measure the agency's decision to deny an application; or even any standards as to how long such an employment authorization is valid.

By the express terms of the regulation, USCIS has the discretion to determine whether it will grant the employment authorization for a period lasting just until USCIS decides on the LPR petition and no longer. 8 C.F.R. § 274a.12(c). The regulation lists no standards for making the decision and does not require the agency to make any sort of factual findings when making that decision.

In other words, it seems clear that USCIS has unfettered discretion to grant or deny EADs to aliens who have filed a petition to become a legal permanent resident. See Perales, 903 F.2d at 1050 (where a statute or regulation "does not restrict the considerations which may be relied upon or the procedures by which the discretion should be exercised," then the agency's discretion is "unfettered.").

Accordingly, the decision to grant or deny EADs to aliens, who have filed a petition to become a legal permanent resident, has been "committed to agency discretion by law" and no measures of this determination are provided by the regulation or statutes. This absence of a standard by which to measure the agency's decision, precludes this Court's jurisdiction to review the agency's decision.

Sandoval Suarez, in her briefing on jurisdiction, re-urges the same arguments that were raised in Villafranca, 2018 WL 8665002 and Torres Casique, Civil No. 1:18-188, Dkt. No. 7. Her arguments are unavailing for the same reasons that they were unavailing in those prior cases.

For that reason, the Court lacks jurisdiction over any APA claim and it should be dismissed without prejudice. Brazos Elec. Power Co-op., 819 F.2d at 543.[2]

**C. Declaratory Judgment**

Sandoval Suarez seeks a declaratory judgment that she is "eligible for an EAD from when [she] properly filed her application for adjustment of status, until such time as [she] is either finally ordered removed, or granted lawful permanent resident status." Dkt. No. 1, p. 7. Despite her arguments, the Court lacks jurisdiction to issue such a declaratory judgment.

As previously noted, the Declaratory Judgment Act is not a standalone basis for jurisdiction; the actual claim must arise under some other federal law. Simi Inv. Co., 236 F.3d at 247. Sandoval Suarez has attempted to raise claims under both 28 U.S.C. § 2241 (habeas) and 5 U.S.C. § 702 (APA). Dkt. No. 1. As discussed above, neither of those statutes grant jurisdiction over the issues in this case. Thus, there is no jurisdictional basis to issue declaratory judgments. Lowe, 723 F.2d at 1179 (5th Cir. 1984). Accordingly, this claim should be dismissed without prejudice for lack of jurisdiction.

---

[2] Even if jurisdiction exists, Sandoval Suarez fares no better. The regulation at issue merely allows an alien, "who has filed an application for adjustment of status to lawful permanent resident[,]" to apply for employment authorization. 8 C.F.R. § 274a.12(c)(9). The regulation is silent as to whether an alien can still be granted employment authorization after USCIS denies the application for adjustment of status. Given this silence, the Court must defer to USCIS's interpretation of the regulation, which provides that once it denies the application for adjustment of status, the alien is no longer eligible for employment authorization. See Decker v. Nw. Envtl. Def. Ctr., 568 U.S. 597, 613 (2013) (Court defers to agency's interpretations of its regulations unless that reading is plainly erroneous); Kisor v. Wilkie, --- U.S. ---, 139 S. Ct. 2400, 2420 (2019) (upholding such deference).

Furthermore, the regulations appear to indicate that, once USCIS denies an LPR application, that application is no longer pending. This conclusion follows from the fact that "[n]o appeal shall lie from the denial of an application by the director[,] but such denial shall be without prejudice to the alien's right to renew his or her application in [removal] proceedings." 8 C.F.R. § 1245.2(c). Moreover, the term "without prejudice" would indicate that the petition is no longer pending once it is denied. See, e.g., Rose v. Computer Scis. Corp., No. CV 15-813, 2017 WL 2911580, at *4 (E.D. La. July 7, 2017) (noting that various definitions of "without prejudice" indicate that such a dismissal means the petition is removed from consideration in that forum without barring the petitioner from refiling that claim later) (citing Black's Law Dictionary (10th ed. 2014)). Given this regulatory language, the agency's reading of 8 C.F.R. § 274a.12(c)(9) is not clearly erroneous.

## IV. Recommendation

It is recommended that the motion to dismiss be granted — Dkt. No. 5 — and that all claims raised by Miriam Sandoval Suarez be dismissed without prejudice for lack of jurisdiction.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas on October 29, 2019.

_____
Ronald G. Morgan
United States Magistrate Judge